RYAN, Circuit Judge.
 

 The plaintiff, Terry L. Yeary, a male, brought suit against his employer, a supervisor, and a coworker, under Title VII, 42 U.S.C. §§ 2000e
 
 et seq.,
 
 alleging that he was sexually harassed by the male coworker, Robert E. Lee. The defendants appeal from the district court’s interlocutory order denying their motion to dismiss, and contend that the plaintiffs claim for same-sex sexual harassment is not cognizable under Title VII. We reject their contention, and will affirm.
 

 
 *-1140
 
 I.
 

 Terry Yeary was hired by Goodwill Industries-Knoxville, Inc., as a part-time cashier in July 1992. Shortly after Yeary began working at Goodwill, Robert Lee, a male coworker, asked Yeary for a date. Although not alleged in Yeary’s complaint, an affidavit prepared by a former coworker of Yeary attests that “it was very well known among employees and higher level management that Mr. Lee was a homosexual and was notorious for harassing male employees of Goodwill.”
 

 According to the plaintiff’s complaint, a couple of weeks after Lee asked Yeary for a date, Lee “again approached the ... plaintiff and began speaking to him in an offensive and harassing manner,” and “physically touched the plaintiff in a harassing manner.” Specifically, Lee “grabbled] [Yeary’s] arm while [he] was arranging clothes on a rack and rubb[ed] the back of his hand across [Yeary’s] chest and stomach.” Yeary allegedly told his manager and assistant manager, as well as the head cashier, about both incidents.
 

 After Yeary had worked at Goodwill for about a month and a half, he suffered a back injury that necessitated a month-long leave of absence. Before returning to his job, Yeary reported to Goodwill in order “to take care of certain administrative matte[r]s.” While there, Lee “requested the plaintiff [to] come to his office. As soon as plaintiff entered ..., defendant grabbed the plaintiff by the arm and pushed him behind the office door and refused to allow the plaintiff to leave. Once again, Defendant Robert E. Lee propositioned the plaintiff....” Specifically, Lee “pin[ned] [Yeary] against the wall and began to whisper obscene comments about [Yeary’s] physical appearance.” Yeary alleges that he reported this incident to the same three individuals to whom he had reported the earlier incidents.
 

 The next month, after Yeary had returned to work, Lee called Yeary at his home on two occasions while Lee was at work. “During both conversations, the defendant made lewd and obscene remarks to the plaintiff.” Specifically,
 

 [o]n one occasion, Mr. Lee telephoned early in the morning and asked [Yeaiy] what [he] was wearing in bed. Further, Mr. Lee asked [Yeary] if [he] masturbated. Finally, Mr. Lee asked [Yeary] if [he] had ever seen “12 inches” or if [he] had ever had “12 inches.”
 

 Again, Yeary allegedly reported this incident to his supervisors. According to Yeary and the head cashier with whom he had discussed Lee’s conduct, his supervisors did not reprimand Lee, but instead “laughed and joked” about Lee’s actions, and “discuss[ed] the fact that Mr. Lee had a history of harassing male employees of Goodwill.”
 

 Shortly thereafter, one supervisor requested that Yeary attend a management meeting in order to report Lee’s behavior. Yeary did so and reported the incidents described above to a number of supervisory personnel, including defendant Robert G. Rosenbaum, the president and CEO of Goodwill. Yeary was terminated by Rosenbaum the same day.
 

 Yeary filed an EEOC charge in March 1993, and received a right-to-sue letter. He then filed a complaint in federal district court against Goodwill, Lee, and Rosenbaum, alleging that the defendants’ actions violated Title VII. Yeary’s complaint set forth many of the details of the incidents of harassment described above, and further alleged that Yeary had informed management about the incidents on multiple occasions. Finally, the complaint alleged that Yeary was terminated “[a]s a proximate result of defendants’ conduct.”
 

 The defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and attached an affidavit from defendant Rosen-baum. The plaintiff responded with his own affidavits and one from the head cashier. The district court observed that “[a]t the heart of defendants’ motion is whether same-sex sexual harassment is actionable under Title VII.” The court concluded that it is and, accordingly, denied the motion, but stayed the proceedings and certified the order as one involving a controlling question of law, in order to allow for an interlocutory appeal under 28 U.S.C. § 1292(b). We granted permission to appeal.
 

 
 *-1139
 
 II.
 

 We note initially that there is some question whether this appeal should be treated as one arising under Fed.R.Civ.P. 12(b)(6) or under Fed.R.Civ.P. 56(c). Roughly stated, the traditional rule is that when a district court considers matters outside the pleadings in ruling on a motion to dismiss under Rule 12(b)(6), its ruling is treated as one under Rule 56(c).
 
 See Sinclair v. Schriber,
 
 916 F.2d 1109, 1112 (6th Cir.1990);
 
 see also
 
 Fed. R.Civ.P. 12(b). Although dispositions under either rule receive
 
 de novo review
 
 from this court, there are significant differences between the two.
 
 See RMI Titanium Co. v. Westinghouse Elec. Corp.,
 
 78 F.3d 1125, 1134 (6th Cir.1996);
 
 see also Briggs v. Ohio Elections Comm’n,
 
 61 F.3d 487, 493 (6th Cir. 1995).
 

 There are several caveats that accompany disposition of a 12(b)(6) motion under 56(c). For example, in analyzing the risk of prejudicial surprise to the moving party resulting from this type of conversion, this court has held that
 

 a party cannot raise for the first time on appeal an argument that she was surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion.
 

 Song v. City of Elyria,
 
 985 F.2d 840, 842 (6th Cir.1993). Further, this court has also held that when affidavits do “nothing more than verify the complaint,” and when they “add[ ] nothing new, but, in effect, reiterate[] the contents of the complaint itself,” they are not truly “materials ... outside the pleading.”
 
 Id.
 

 We conclude that the district court’s disposition should be reviewed as one made pursuant to Fed.R.Civ.P. 12(b)(6). Although the district court certainly considered matters outside the pleadings, those matters simply filled in the contours and details of the plaintiffs complaint, and added nothing new. The district court does not appear to have relied on the affidavits, in the sense that its rationale in any way hinged on the additional information provided there. Moreover, the district court expressly stated that it was ruling under 12(b)(6), and its analysis was based wholly on the legal sufficiency,
 
 vel non,
 
 of the plaintiffs claim. Finally, the defendants had ample opportunity to respond to the plaintiffs affidavits. It cannot be said that they suffered any prejudicial surprise.
 

 We therefore review the district court’s denial of the motion to dismiss
 
 de novo,
 
 and must affirm unless “ ‘it is established beyond a doubt that the plaintiff cannot prove any set of facts consistent with the allegations that would entitle such plaintiff to relief.’”
 
 Song,
 
 985 F.2d at 843 (citations omitted).
 

 III.
 

 Title VII of the Civil Rights Act of 1964 provides that “[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire ... any individual ... because of such individual’s ... sex,” 42 U.S.C. § 2000e-2(a), and it applies equally to men and women,
 
 see, e.g., Newport News Shipbuilding & Dry Dock Co. v. EEOC,
 
 462 U.S. 669, 676, 103 S.Ct. 2622, 2627, 77 L.Ed.2d 89 (1983). The rationale for the hostile-environment doctrine is that sufficiently abusive harassment adversely affects a “term, condition, or privilege” of employment within the meaning of Title VII.
 
 See Meritor Sav. Bank v. Vinson,
 
 477 U.S. 57, 67, 106 S.Ct. 2399, 2405-06, 91 L.Ed.2d 49 (1986). We have held that the elements of a
 
 prima facie
 
 hostile environment claim in the sex discrimination context are as follows:
 

 (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome[] sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3)
 
 the harassment complained of was based upon sex;
 
 (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiffs work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (5) the existence of respondeat superi- or liability.
 

 Rabidue v. Osceola Refining Co.,
 
 805 F.2d 611, 619-20 (6th Cir.1986) (emphasis added);
 
 *-1138
 

 accord Risinger v. Ohio Bureau of Workers’ Compensation,
 
 883 F.2d 475, 484 (6th Cir. 1989). These standards were derived from nonbinding administrative guidelines promulgated by the EEOC.
 
 Id.
 
 at 619 & 619 n. 4. Only the third prong is at issue here.
 

 The defendants argue that construing Title VII to reach same-sex sexual harassment would be an unjustified “expansion” of the statutory language. They assert that various courts have concluded that Title VII should apply only to the “traditional concept of sex,” making it “unlawful to discriminate against'women because they are women and against men because they are men.” They assert that the plaintiffs claim is a “nontraditional claim,” arguing that only “opposite-sex discrimination” is actionable under Title VII. They also claim that for the plaintiff to show he was harassed “because of ... sex” within the meaning of Title VII, he must show he was harassed because of “an imbalance of power and/or vulnerability arising as a result of his sex,” and that only if the alleged harassment had the function of creating an “anti-male environment” would it be actionable.
 

 Interestingly, the EEOC’s understanding of sexual harassment directly opposes the narrow understanding proposed by the defendants. The EEOC compliance manual explicitly provides that same-sex sexual harassment is actionable under Title VII.
 

 (b)
 
 Recognizing Sexual Harassment
 
 — A finding of sexual harassment does not depend on the existence of any one given set of facts. Sexual harassment can occur in a wide variety of circumstances and encompass many variables. Although the most widely recognized fact pattern is that in which a male supervisor sexually harasses a female employee, this form of harassment is not the only one recognized by the EEOC. The Commission’s view of sexual harassment includes, but is not limited to, the following considerations:
 

 (3)
 
 The victim does not have to be of the opposite sex from the harasser.
 
 Since sexual harassment is a form of sex discrimination, the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex. The victim and the harasser may be of the same sex where, for instance, the sexual harassment is based on the victim’s sex
 
 (not
 
 on the victim’s sexual preference) and the harasser does not treat employees of the opposite sex the same way.
 

 EEOC Compliance Manual, § 615.2(b)(3) (second emphasis added). “Although the courts are not bound by the EEOC’s interpretation of Title VII, it is nevertheless appropriate to consider the EEOC’s interpretation because of the EEOC’s charge to enforce the Act.”
 
 Hopkins v. Baltimore Gas & Elec. Co.,
 
 77 F.3d 745, 750 (4th Cir.) (citing
 
 Meritor Sav. Bank,
 
 477 U.S. at 65, 106 S.Ct. at 2404 — 05),
 
 cert. denied,
 
 — U.S. —, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).
 

 Only a few courts of appeals have addressed the issue of same-sex sexual harassment, and this court is not among them.
 
 See Fleenor v. Hewitt Soap Co.,
 
 81 F.3d 48, 49-50 (6th Cir.),
 
 cert. denied,
 
 — U.S.—, 117 S.Ct. 170, 136 L.Ed.2d 112 (1996). Of those to have done so, the Eighth Circuit appears to have applied the doctrine most broadly. In
 
 Quick v. Donaldson Co.,
 
 90 F.3d 1372 (8th Cir.1996), the male plaintiff filed a Title VII “hostile environment sexual harassment claim[] based on allegations that male coworkers physically and verbally harassed [him] for two years and that his employer ... knew of the harassment but faded to respond with proper remedial action.”
 
 Id.
 
 at 1374. Other than the general, same-sex sexual harassment issue,
 
 Quick
 
 bears little similarity to this case. There, the heterosexual plaintiff complained principally of physical assaults routinely aimed by male employees solely against other males. There was no suggestion, however, that the males who engaged in the assaults were homosexual, or that the assaults were motivated by sexual attraction.
 

 The district court in
 
 Quick
 
 dismissed the plaintiffs same-sex harassment claim, relying upon essentially the same argument the defendants make here. The court of appeals reversed, stating:
 

 
 *-1137
 
 Although there is little legislative history as to what discrimination “based on sex” means, the key inquiry is whether “members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.” Evidence that members of one sex were the primary targets of the harassment is sufficient to show that the conduct was gender based for purposes of summary judgment....
 

 The district court departed from these legal standards in fashioning the test it employed in ruling on Donaldson’s summary judgment motion. Protection under Title VII is not limited to only disadvantaged or vulnerable groups. It extends to all employees and prohibits disparate treatment of an individual, man or woman, based on that person’s sex. The district court therefore erred in requiring Quick to show evidence of an anti-male or predominantly female work environment.
 

 Id.
 
 at 1378 (citations omitted). Because male employees in
 
 Quick
 
 were exposed to a disadvantageous practice to which female employees were not, “a fact-finder could reasonably conclude that the treatment of men at Donaldson was worse than the treatment of women. Thus, Quick has raised a genuine issue of material fact as to whether the alleged harassment was gender based.”
 
 Id.
 
 at 1879.
 

 In contrast to the Eighth, one circuit, the Fifth, has rejected same-sex sexual harassment claims outright. In
 
 Oncale v. Sun-downer Offshore Services, Inc.,
 
 83 F.3d 118, 120 (5th Cir.1996),
 
 petition for cert. filed,
 
 65 U.S.L.W. 3432 (U.S. Dec. 16, 1996) (No. 96-568), the court concluded that it was bound by its earlier decision in
 
 Garcia v. Elf Ato-chem North America,
 
 28 F.3d 446 (5th Cir. 1994). In
 
 Garcia,
 
 the court had relied on a rather elliptical unpublished decision, providing little independent analysis, -to hold that all same-sex sexual harassment claims were barred, regardless of the circumstances.
 
 See Oncale,
 
 83 F.3d at 120.
 

 The Fourth Circuit has taken a middle ground, rejecting the type of same-sex sexual harassment claim permitted to go forward in
 
 Quick,
 
 while allowing the type of claim presented in this case.
 
 Compare Wrightson v. Pizza Hut,
 
 99 F.3d 138 (4th Cir.1996),
 
 and McWilliams v. Fairfax County Rd. of Supervisors,
 
 72 F.3d 1191 (4th Cir.),
 
 cert. denied,
 
 — U.S. —, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996). In the Fourth Circuit’s view, “a claim under Title VII for same-sex ‘hostile work environment’ harassment may lie where the perpetrator of the sexual harassment is homosexual,”
 
 Wrightson,
 
 99 F.3d at 141, because in that type of case, an employee can prove he was harassed by an employee of the same sex “because of’ the harassed employee’s sex, as required by Title VII,
 
 id.
 
 at 142. When both the harasser and harassed are heterosexual and of the same sex, however, the Fourth Circuit has held that the harassing conduct cannot be
 

 considered to be “because of the [target’s]
 
 ‘sex.’
 
 ” Perhaps “because of’ the victim’s known or believed prudery, or shyness, or other form of vulnerability to sexually-fo-cussed speech or conduct. Perhaps “because of’ the perpetrators’ own sexual perversion, or obsession, or insecurity. Certainly, “because of’ their vulgarity and insensitivity and meanness of spirit. But not specifically “because of’ the victim’s
 
 sex.
 

 McWilliams,
 
 72 F.3d at 1196.
 

 Finally, a number of circuits have suggested in
 
 dicta
 
 their willingness to entertain same-sex sexual harassment claims.
 
 See, e.g., McDonnell v. Cisneros,
 
 84 F.3d 256, 260 (7th Cir.1996);
 
 Steiner v. Showboat Operating Co.,
 
 25 F.3d 1459, 1464 (9th Cir.1994);
 
 Saulpaugh v. Monroe Community Hosp., 4
 
 F.3d 134, 148 (2d Cir.1993) (Van Graafeiland, J., concurring).
 
 See generally Morgan v. Massachusetts Gen. Hosp.,
 
 901 F.2d 186 (1st Cir.1990).
 

 The facts of this case do not suggest that Yeary was harassed by Lee because Yeary was, for instance, a transsexual, a transvestite, or a homosexual. The case is, therefore, entirely distinct from the cases the defendants point to as standing for the proposition that only “traditional” notions of sex discrimination are actionable under Title VII. Instead, this case is as traditional as they come, albeit with a twist. It is about an employee making sexual propositions to and physically
 
 *-1136
 
 assaulting a coworker because, it appears, he finds that coworker sexually attractive. This is a scenario that has been found actionable countless times over, when the aggressor is a male and the victim is a female. Likewise, there is no serious question that the same scenario would be actionable in the less typical case where the aggressor is a female and the victim is a male. Consequently, we find no substantive difference between either of those situations and that present here. While the defendants are correct that same-sex sexual harassment cases may potentially present difficult questions for a court, this case is not one that does.
 

 The only question here is whether a complaint can potentially state a Title VII claim when both the harasser and harassed are of the same sex. This, in turn, requires us to analyze whether such harassment can ever occur “because of ... sex.” There is no question that Yeary has sufficiently alleged that he was harassed “because of’ his sex. He claims that because he is a male, he was subjected to objectionable treatment to which women employees at Goodwill were not subjected. The complaint does not suggest that Yeary was targeted by Lee because Yeary was mentally disabled, or because Yeary was prudish about sex, or because of any of the other non-sex-based reasons that have presented themselves in other cases. The complaint suggests, instead, that Lee was targeting Yeary for sexual attention because Yeary was a male and he was attractive to Lee. If true, this creates an institutional disadvantage for Yeary in working at Goodwill, simply by virtue of the fact that he is a man. He had to put up with abuse and harassment that women there did not have to endure.
 

 It is not necessary for this court to decide today whether same-sex sexual harassment can be actionable
 
 only
 
 when the harasser is a homosexual; all that is necessary for us to observe is that when a male sexually propositions another male
 
 because of sexual attraction,
 
 there can be little question that the behavior is a form of harassment that occurs
 
 because
 
 the propositioned male is a male— that is, “because of ... sex.”
 

 We think the district court correctly concluded that the plaintiff has made out an actionable claim under Title VII.
 

 AFFIRMED.