**Wallace LoWarren DAVIS, Appellant,**

v.

**COASTAL INTERNATIONAL SECURITY, INC. and Securiguard, Inc., Appellees.**

No. 00–7293.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 30, 2001.

Decided Jan. 11, 2002.

Thomas Ruffin, Jr. argued the cause and filed the briefs for appellant.

Nancy M. O'Connor argued the cause for appellee Coastal International Security, Inc. With her on the brief were J. Tullos Wells, Julia M. Rendon and James F. Parker III.

Eric Paltell argued the cause for appellee Securiguard, Inc. With him on the brief was Lynn A. Clements.

Before: GINSBURG, Chief Judge, and RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A male employee of a security company alleges that two co-workers, also male, sexually harassed him in violation of Title VII of the Civil Rights Act of 1964. Finding the three employees engaged in only a "workplace grudge match," the district court granted summary judgment for the employers. We affirm. Not one of the alleged acts of sexual harassment, ranging from vulgar comments and gestures to tire slashing, constitutes discrimination because of sex, as required by Title VII.

I.

The extended and rancorous workplace dispute giving rise to this action began in 1996 after appellee, Coastal International Security, through its subcontractor and co-appellee Securiguard, hired appellant Wallace Davis to work as a security guard at the Environmental Protection Agency. While serving as a supervisor early in his tenure, Davis disciplined two other Coastal security guards, Aaron Smith and Everett Allen, for various on-the-job infractions. Viewed through the lens we use at summary judgment, see Abraham v. Graphic Arts Int'l Union, 660 F.2d 811, 814 (D.C.Cir.1981) (noting that at summary judgment, "facts asserted by the non-movant, if adequately buttressed by evidentiary material, are to be taken as true" (citations omitted)), record evidence indicates that Smith and Allen, apparently infuriated by their discipline, launched a retaliatory campaign against Davis, which they began by repeatedly slashing his tires.

After Davis complained to his supervisor, Coastal required the three men to sign a memorandum of understanding in which they agreed to set aside their differences. This agreement accomplished nothing. When Davis was demoted, in part for his failure to abide by the memorandum of understanding, Smith and Allen visited his work station and taunted him about the demotion. On other occasions, Allen told Davis that he "ma[de] him sick," and that he found Davis "aggravat[ing]." Davis again found his tires slashed.

Approximately six months into their campaign against Davis, Smith and Allen expanded their repertoire. Smith approached Davis at his work station and grabbed his (Smith's) crotch, made kissing gestures, and used a phrase describing oral sex. (Readers interested in additional description of this behavior may consult the briefs and record, which spare no detail, however vulgar.) After Smith twice repeated this performance, Davis complained to his supervisor, who convened a meeting with Davis, Smith, and Coastal's project manager for the EPA facility. Because Smith denied Davis's accusations, and because Davis failed to provide cor-

roborating evidence, the project manager took no formal action, but admonished both Davis and Smith to "act like grown men."

Undeterred, Smith continued his vulgar comments and gestures, and Davis again complained to his supervisor. This time the supervisor warned Smith that he would be fired if his behavior continued. This seems to have gotten Smith's attention, for his lewd conduct ceased (although Davis alleges that Smith threatened his life on several subsequent occasions). Allen, however, picked up the cudgel, twice approaching Davis and making precisely the same lewd gestures and comments that Smith had.

When Davis complained for a third time, Coastal conducted a full-scale investigation. Although the investigator interviewed ten employees, he concluded that the inquiry had been "hampered by the lack of a reliable witness to substantiate even one allegation of sexual harassment by ... Davis." Notwithstanding this lack of corroborating evidence, the investigator recommended that Davis and Allen be reassigned (Coastal had terminated Smith for unrelated reasons). Shortly thereafter, Davis filed one final complaint, claiming again that Allen, despite his reassignment, had repeated the by-now-familiar lewd gestures and comments.

In January 2000, over three years after these events began, Davis filed suit in the United States District Court for the District of Columbia, alleging that Smith's and Allen's behavior amounted to sexual harassment and that Coastal and Securiguard "permitted ... Allen ... and ... Smith to make sexually vulgar gestures and statements." The companies' actions, the complaint alleges, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and section1–2512(a) of the District of Columbia Human Rights Act, D.C.CODE ANN. § 1–2512(a). In an oral ruling, later confirmed in a memorandum opinion, the district court granted summary judgment for Coastal and Securiguard on both claims. While Davis, Smith, and Allen "obviously hated each other" and "were fighting like scorpions in a bottle," the district court found, Smith's and Allen's behavior "ha[d] nothing to do with sexual harassment." Tr. of Mots. Hr'g at 36, *Davis v. Coastal Int'l Security, Inc.*, No. CA 00–0074 (D.D.C. Oct. 20, 2000). "[T]he fact that [Smith and Allen] used references to their anatomies or used their anatomies as part of their harassment does not make it sexual harassment unless they were harassing because of gender ..., and there is simply no evidence that they were harassing Mr. Davis because of their gender or because of his gender." *Id.*

■ Davis now appeals. Our review is de novo. *See Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998).

## II.

■ Title VII, which prohibits employers from discriminating "against any individual ... because of such individual's ... sex," 42 U.S.C. § 2000e–2(a)(1), protects both men and women, *see, e.g., Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 675–76 & n. 11, 103 S.Ct. 2622, 2627 & n. 11, 77 L.Ed.2d 89 (1983). Sex discrimination includes creating a hostile or abusive work environment if the harassment is sufficiently abusive to affect a "term, condition, or privilege" of employment. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). To make a prima facie Title VII hostile environment claim, the plaintiff employee must show:

(1) the employee was a member of a protected class; (2) the employee was

subjected to unwelcome[ ] sexual harassment ...; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment ...; and (5) the existence of respondeat superior liability.

*Yeary v. Goodwill Industries–Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir.1997).

■ Like the district court, we begin and end with Davis's failure to satisfy the third element of a prima facie case: that the alleged harassment amounts to discrimination because of sex. As the Supreme Court observed in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), this element of a hostile-environment claim presents a plaintiff with serious obstacles where, as here, the perpetrators and plaintiff are of the same sex. Although when "the challenged conduct ... involves explicit or implicit proposals of sexual activity" between members of the opposite sex "it is reasonable to assume those proposals would not have been made to someone of the same sex," the same assumption of disparate treatment, the Court explained, may not as readily be made in the same-sex harassment context. 523 U.S. at 80, 118 S.Ct. at 1002. To address this problem, the Court suggested three ways to prove that same-sex sexual behavior rises to the level of illegal sexual harassment: The plaintiff may show that the sexual behavior is motivated by actual homosexual desire; that the harassment is framed in "such sex-specific and derogatory terms ... as to make it clear that the harasser is motivated by general hostility" toward members of the same gender in the workplace; or that there is "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 80–81, 118 S.Ct. at 1002.

Davis's effort to mold his allegations into a plausible Title VII claim rests on the first and third methods of proof. He begins by claiming that Smith's and Allen's behavior amounted to sexual propositions. No reasonable jury could believe this. For one thing, Davis's own testimony conclusively shows that Smith and Allen were motivated by a workplace grudge, not sexual attraction. In his deposition, Davis testified that he is not homosexual, that he had no reason (other than the behavior of which he complains) to believe that either Smith or Allen is homosexual, that Smith and Allen were motivated by their resentment of Davis's disciplinary action, and that Smith and Allen both repeatedly made clear that they despised Davis. Most damaging to Davis, although he claimed early in his deposition that he understood "without a shadow of a doubt" that Smith's and Allen's comments and gestures amounted to a serious sexual proposition, Davis later stated, "I don't know if they were asking me to have sexual relations with them. I don't really know what they were saying...."

■ Davis's assertion that Smith's and Allen's behavior amounted to a series of sexual advances also ignores the dual teachings of *Oncale:* that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed," *id.* at 81–82, 118 S.Ct. at 1003, and that plaintiffs who pursue sexual harassment claims "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex,'" *id.* at 80–81,

118 S.Ct. at 1002 (emphasis omitted). Although Smith's and Allen's performances were certainly "tinged with offensive sexual connotations," we agree with the district court that when their behavior is viewed in light of "surrounding circumstances," the two were not sexually propositioning Davis. In a virtually identical case, *Johnson v. Hondo, Inc.*, the Seventh Circuit held that a plaintiff's claim that a male coworker, inspired by a long history of mutual dislike, tormented him with a series of sexually explicit comments accompanied by lewd gestures "failed to raise a triable issue as to whether [the harasser's] comments were because of [the plaintiff's] gender." 125 F.3d 408, 412 (7th Cir.1997). The court's analysis applies here as well:

> Most unfortunately, expressions [that employ obscene language] are commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men speaking to other men), their use has no connection whatsoever with the sexual acts to which they make reference—even when they are accompanied, as they sometimes were here, with a crotch-grabbing gesture. Ordinarily, they are simply expressions of animosity or juvenile provocation, and there is no basis in this record to conclude that [the harasser's] usage was any different.

*Id.*

Attempting to distinguish *Johnson,* Davis points out that Johnson's workplace was all-male and that Johnson, unlike Davis, retaliated against his tormentors. We see no significance in these distinctions. Same-sex harassment can occur in single or mixed-sex workplaces, *cf. Oncale,* 523 U.S. at 77, 82, 118 S.Ct. at 1001, 1003 (holding that plaintiff could bring same-sex harassment suit even though he worked in an all-male environment), and no authority suggests that workers who retaliate against their harassers forfeit Title VII protection.

Not only do we thus think this case indistinguishable from *Johnson,* but Davis himself recognizes that certain obscene expressions, "particularly when uttered by men speaking to men, . . . ha[ve] no connection whatsoever with the sexual acts to which they make reference." *Johnson,* 125 F.3d at 412. During Coastal's full-scale investigation, a co-worker provided evidence that Davis used a vulgar description of a sex act to describe his animosity toward the company. Asked at oral argument whether Davis actually meant to perform a sex act, his counsel responded, "No. What he meant was . . . he was angry . . . ." Tr. of Oral Arg. at 10.

Invoking *Oncale*'s third method of proof, Davis next argues that because Smith and Allen directed their behavior at him, and not at any female Coastal employees, they systematically treated men differently than women. To succeed on this theory, however, Davis must produce "direct comparative evidence about how the alleged harasser treated *members* of both sexes in a mixed-sex workplace." *Oncale,* 523 U.S. at 80–81, 118 S.Ct. at 1002 (emphasis added). This Davis has failed to do. He has shown not that Smith and Allen treated *men* differently than women, but that they treated *Davis* differently than all other members of the Coastal workforce, whether male or female. If anything, this showing actually undermines Davis's claim: It suggests that Smith and Allen targeted Davis because of his behavior as an individual rather than because of his sex. Apparently aware of this serious defect in his case, Davis goes so far as to suggest that any adverse treatment in the workplace constitutes discrimination when aimed at a single individual: "After all, when Smith threatened to kill Davis, doing so on about

ten different occasions, Smith sexually discriminated against Davis because Smith never similarly threatened female employees." Appellant's Reply Br. at 1. Rejecting this preposterously broad interpretation of Title VII requires little discussion, for such a theory would convert the statute from a law aimed at eradicating discrimination to one that prescribes a "general civility code for the American workplace." *Oncale*, 523 U.S. at 80, 118 S.Ct. at 1002.

While Davis correctly notes that courts do not always require Title VII plaintiffs to show that their harasser targeted multiple members of the plaintiff's sex, such a showing *is* required where, as here, the plaintiff proceeds under the third *Oncale* method and claims that the harassers treated men as a group differently than women as a group. In saying this, we emphasize that employees with legitimate sexual harassment claims may invoke Title VII's protections even absent systemic workplace harassment. As *Oncale* makes clear, a lone plaintiff can sustain a sexual harassment action if he or she suffers abusive treatment motivated by sexual desire or evincing animus toward his or her gender. *See id.* at 80–81, 118 S.Ct. at 1002 (holding that showing systemic harassment is not the only means of proving Title VII claim); *see also, e.g., Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999) (finding female employee's allegations of sexual harassment and rape by a male supervisor "indisputably sufficient" to survive summary judgment).

Davis devotes many pages of his briefs trying to show that other circuits have allowed suits like his to survive summary judgment. Properly read, the cases he cites stand for nothing more than the unremarkable principle that plaintiffs in same-sex harassment suits can survive summary judgment by making a plausible showing according to one of the three *On-*

*cale* methods. Three of the cited cases allowed same-sex harassment suits brought by lone male employees to survive summary judgment on the first *Oncale* theory, noting the plaintiff's undisputed evidence establishing that actual homosexual desire motivated the harassment. *See Yeary,* 107 F.3d at 447–48; *Shepherd v. Slater Steels Corp.,* 168 F.3d 998, 1009–10 (7th Cir.1999); *Fredette v. BVP Mgmt. Assocs.,* 112 F.3d 1503, 1510 (11th Cir. 1997). In *Yeary,* the Sixth Circuit expressly limited its holding to the point that "when a male sexually propositions another male *because of sexual attraction,* there can be little question that the behavior is a form of harassment that occurs because of … sex." *Yeary,* 107 F.3d at 448. Another case Davis cites relied on the third *Oncale* theory and noted the plaintiff's allegations that the harassers targeted virtually all men and no women in a mixed-sex workplace. "Evidence that members of one sex were the primary targets of the harassment," the court held, "is sufficient to show that the conduct was gender based for purposes of summary judgment." *Quick v. Donaldson Co.,* 90 F.3d 1372, 1378 (8th Cir.1996) (citation and internal quotation marks omitted). The last circuit court decision Davis cites was not even a hostile-environment case—the defendant was found liable for same-sex harassment on a quid-pro-quo theory (which requires no showing of differential treatment). *Kelly v. City of Oakland,* 198 F.3d 779, 785 (9th Cir.1999). Davis also cites a litany of district court cases, all of which are easily distinguishable on similar grounds.

### III.

In rejecting Davis's claims, we emphasize that nothing in this decision limits the capacity of men with legitimate sexual harassment complaints to bring Title VII actions against other men. We find only

that however vulgar Smith's and Allen's behavior, no reasonable jury could believe that it constitutes discrimination because of sex. To conclude otherwise on the facts of this case would trivialize the important values protected by Title VII and elevate a gross workplace dispute into a federal case. Nor does anything we say here preclude female plaintiffs subjected to comments and gestures like those at issue in this case from bringing Title VII sexual harassment suits. As *Oncale* holds, context matters: "A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office." *Id.* at 81, 118 S.Ct. at 1003.

Finally, while Davis has no cause of action under Title VII, we note that he may have remedies under local law (though they may not provide for recovery of attorney's fees, as does Title VII). Indeed, claiming that Smith and Allen engaged in felony threats, assault, and destruction of property, Davis sought a stay-away order against the two men in the District of Columbia Superior Court. *Davis v. Smith,* Civil Action No. 3287–99 (Sup.Ct. D.C. May 14, 1999). These allegations could also support a civil action under D.C. law, *see Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523, 529 & n. 13 (D.D.C.1981) (outlining elements of a cause of action for assault), *Woodward v. Dipalermo,* 686 F.Supp. 1, 5 (D.D.C.1986) (outlining elements of a cause of action for malicious destruction of property), *rev'd in part on other grounds, and remanded sub nom. Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* 839 F.2d 782 (D.C.Cir.1988), and Davis could have reported the alleged tire slashing and death threats to the Metropolitan Police Department. And of course, no legal action would have been necessary at all had Davis, Smith, and Allen heeded their project manager's admonition to "act like grown men."

The judgment of the district court is affirmed.

*So ordered.*