James P. REGAN, Plaintiff,

v.

GRILL CONCEPTS–D.C., INC., Defendant.

No. CIV.A.02–884 AK.

United States District Court, District of Columbia.

Oct. 5, 2004.

Karen Ann Khan, Washington, DC, for Plaintiff.

David Patrick Durbin, Deborah M. Whelihan, Jordan, Coyne & Savits, Washington, DC, for Defendant.

### MEMORANDUM ORDER

KAY, United States Magistrate Judge.

This case is before the Court by consent of the parties to proceed before a United States Magistrate Judge, filed on March 25, 2003. The Defendant filed a Motion for Summary Judgment ("Motion") [30] on July 14, 2004. The Plaintiff filed his Memorandum in Opposition ("Opposition") [32] on August 6, 2004, and the Defendant filed its Reply to the Opposition ("Reply") [33] on August 21, 2004.

## I. BACKGROUND

James P. Regan, a resident of the Commonwealth of Virginia, was employed as a manager of the Daily Grill at both its Georgetown location and its M Street location between May 14, 2001 and April 26, 2002. On February 25, 2002, two months prior to his being terminated from his employment, Regan was suspended from his position. The Plaintiff claims that the reason that he was suspended, and ultimately terminated from his employment, was because he complained to management about harassment and discrimination that he believed was occurring at the restaurant. (Plaintiff's Statement of Undisputed Facts, ¶ 100.) The Defendant contends that Plaintiff's employment was terminated because of complaints made by other Daily Grill employees of sexual harassment, in which the Plaintiff was the alleged perpetrator. (Motion at 2.)

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

A party is entitled to summary judgment if the pleadings and evidence show that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. However, the nonmoving party must present more than a "scintilla of evidence" and must come forward with specific facts that would enable a reasonable jury to find in its favor. *Id.* at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the evidence presented by the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

In the context of discrimination cases, summary judgment should be approached with special caution because of the difficulty of proving discriminatory intent and disparate treatment. *Morgan v. Federal Home Loan Mortgage Corp.*, 172 F.Supp.2d 98, 104 (D.D.C.2001) ("While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial.") (*quoting Calhoun v. Johnson*, Civil No. 95–2397, 1998 WL 164780 at *3 (D.D.C. Mar. 31, 1998)) (citation omitted); *Ross v. Runyon*, 859 F.Supp. 15, 21–22 (D.D.C.1994). These standards do not eliminate the use of summary judgment in discrimination cases. *See, e.g., Clark County School District v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (finding that District Court's grant of summary judgment was proper

and overturning Court of Appeals decision that reversed District Court); *Forkkio v. Powell*, 306 F.3d 1127, 1132 (D.C.Cir.2002) (upholding grant of summary judgment for defendant in Title VII case alleging racial discrimination and retaliation); *Brown v. Brody*, 199 F.3d 446, 448 (D.C.Cir.1999) (upholding grant of summary judgment for defendant in Title VII suit alleging racial and gender discrimination and retaliation). Summary judgment is not a "disfavored procedural shortcut," but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case. *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548.

## B. Legal Standard for Claims under DC Human Rights Act

■ The DCHRA prohibits an "employer" from discriminating against its employees. D.C.Code § 1–2525. In analyzing a claim of employment discrimination under the DCHRA, courts look to Title VII and its jurisprudence. *Knight v. Georgetown Univ.*, 725 A.2d 472, 478 n. 5 (1999); *Daka, Inc., v. Breiner*, 711 A.2d 86, 92 n. 14 (1998); *Goos v. National Ass'n of Realtors*, 715 F.Supp. 2, 3 (D.D.C.1989)(applying the analysis in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to case brought under DCHRA). This Court too, will consider Plaintiff's claims under DCHRA utilizing the case law developed for suits brought under Title VII.

■ The requirements for a *prima facie* case of discrimination are flexible and vary depending on the type of case. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. Here, to establish a claim of gender discrimination, the Plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrim-

ination. *Dickerson v. SecTek, Inc.*, 238 F.Supp.2d. 66, 73 (D.C.Cir.2002)(quoting *Greene v. Dalton*, 164 F.3d 671, 334 U.S.App.D.C. 92 (D.C.Cir.1999)). To establish a claim of hostile work environment, the Plaintiff must demonstrate: (1) that he is a member of a protected class, (2) that he has been subjected to unwelcome harassment, (3) that the harassment was based on membership in the protected class, and (4) that the harassment is severe and pervasive enough to affect a term, condition or privilege of employment. *Lively v. Flexible Packaging Association, et al.*, 830 A.2d 874 (D.C.2003)(citing *Daka v. Breiner*, 711 A.2d 86, 92 (D.C.1998)); *Howard University v. Best*, 484 A.2d 958 (D.C.1984). Finally, to establish a claim of retaliation, the Plaintiff must prove that (1) he engaged in statutorily protected activity; (2) he was subjected to adverse employment action; and (3) that a causal connection exists between the two. *Brodetski v. Duffey*, 199 F.R.D. 14, 19 (D.D.C. 2001); *Hastie*, 121 F.Supp.2d at 79–80; *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985)(*quoting McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C.Cir.1984)); *See also, Carney v. American University*, 151 F.3d 1090, 1094 (D.C.Cir.1998); *Thomas v. National Football League Players Ass'n*, 131 F.3d 198, 202 (D.C.Cir.1997).

In *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a burden-shifting framework that governs the analysis of discrimination and retaliation claims. *See, e.g., Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The Plaintiff bears the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Then the burden shifts to the Defendant "to articulate some legitimate,

nondiscriminatory reason" for the action. *Id.* If the Defendant meets this burden, then the presumption of discrimination is rebutted and drops from the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Plaintiff must then show that the articulated reason was a pretext and that the actual reason was discriminatory. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. At all times, the ultimate burden of persuasion remains with the Plaintiff to prove that she was subjected to discrimination. *Hicks,* 509 U.S. at 507–08, 113 S.Ct. 2742; *Brown v. Brody,* 199 F.3d at 458.

## III. ANALYSIS

### A. Gender Discrimination

As stated above, the Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. To that end, the Plaintiff must show (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Dickerson v. SecTek, Inc.,* 238 F.Supp.2d 66, 73 (D.D.C.2002)(quoting *Greene v. Dalton,* 164 F.3d 671, 334 U.S.App.D.C. 92 (D.C.Cir.1999)). The Court is mindful that the initial burden is not great, and that within the context of a motion for summary judgment it must view the evidence in the light most favorable to the Plaintiff. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

The first two prongs are met with relative ease. The Plaintiff is a male and was terminated from his employment. The prong that requires a more detailed analysis is whether the unfavorable action gives rise to an inference of discrimination.

Plaintiff's claim of gender discrimination is based on the allegation that Plaintiff was treated differently from other individuals who were also accused of sexual harassment. (Opposition at 17.) In support of this claim, the Plaintiff argues that he complained to his superiors about sexually inappropriate behavior and comments made by other employees in the restaurant and that his superiors took no corrective action and did not even consider his complaints to be 'sexual harassment' complaints. (Motion at 9–11, 14.) To the contrary, according to Plaintiff, when a female employee, Jennifer Bezdicek, complained of sexually inappropriate behavior against Regan, the supervisors of the restaurant took immediate action to investigate and handle the situation. (Motion at 11–14.)

The Defendant makes two principal arguments. First, according to the Defendant, the Plaintiff's claim of gender discrimination was not properly pled to the Court and as such, is not properly at issue in this case. (Reply at 9.) The Court does not agree. Count One of the Plaintiff's complaint is for Discrimination under the DCHRA. (Complaint at 10.) Paragraph 45, contained in Count One, states, "Plaintiff was also subjected to disparate treatment in terms of his discriminatory discharge in that other female managers were not disciplined or terminated for alleged violations of Grill Concepts' internal policies." (*Id.*) This pleading suffices to establish a claim of gender discrimination.

Next, the Defendant claims that Plaintiff has not made a *prima facie* case of gender discrimination. In support of this assertion, the Defendant cites to testimony of supervisors at the Daily Grill restaurant which states that remedial actions taken in response to Regan's complaint were no different from action taken in response to similar complaints made by female employees. (Reply at 10.) (Supervisor testified that "he believed that his corrective action had resolved minor friction...") These factual arguments do not undermine

Plaintiff's ability to establish a *prima facie* case, although they may bear upon the strength of that case before the fact finder.

Accepting the Plaintiff's allegations as true, as the Court must in the context of a ruling on summary judgment, the Court believes that Plaintiff has succeeded in establishing a *prima facie* case of gender discrimination.

Under the burden shifting framework of *McDonnell Douglas*, the Defendant has the burden of showing that the adverse personnel actions taken were based on gender neutral reasons. In this regard, the Defendant states that the Plaintiff was terminated because of a female employee's complaint alleging that she had been harassed by Regan, as well as Regan's lack of candor during the investigation into the allegations, and also his weak performance.

Although the reasons given by the Defendant, vis-a-vis the decision to terminate Regan, would suffice in shifting the burden back to the Plaintiff to show that the reasons given were pretextual, with respect to the gender discrimination claim, the Defendant's arguments are not relevant.

█ The Plaintiff is not alleging that he was terminated from his employment because of his gender. Rather, he is alleging that his claims of discrimination were handled differently than those of female em-ployees. To counter this assertion, the Defendant must show that the Grill Concepts' *varied handling of the employees' complaints* was gender neutral. The Defendant's argument that the decision to *terminate Regan's employment* was gender neutral, while potentially appropriate in countering Plaintiff's retaliation claim, is not a relevant response to his gender discrimination claim.

Thus, the Defendant has failed to meet its burden under *McDonnell Douglas*. The Plaintiff's claim as to gender discrimination, therefore, survives summary judgment.

## B. Hostile Work Environment

Before undertaking an analysis of the Plaintiff's hostile work environment claim, the Court must determine the applicable case law. The Defendant urges the Court to utilize a five-pronged test for hostile work environment claims. (Motion at 6.)(citing *Davis v. Coastal Int'l Security, Inc.*, 275 F.3d 1119 (D.C.Cir.2002)).[1] The Plaintiff, on the other hand, cites to *Dickerson v. SecTek, Inc.*, which identifies a three-pronged test for hostile work environment claims. *Id.*, 238 F.Supp.2d 66, 83 (D.D.C.2002).[2] Although the two tests for hostile work environment are essentially the same, it is no less imperative for the Court to begin its analysis by utilizing the correct legal standard.

---

**1.** The five-pronged test in *Davis* is as follows: "(1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome [ ] sexual harassment ...; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with plaintiff's work performance and creating an intimidating, hostile, or offensive working environment ...; and (5) the existence of respondent superior liability." *Davis*, 275 F.3d at 1122–1123 (citing *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir.1997)).

**2.** The three-pronged test in *Dickerson* is as follows: "plaintiff must show (1) that the defendant was engaged in offensive and disparaging conduct; (2) that the conduct was based on sex; and (3) that it was 'sufficiently severe or pervasive that a reasonable person in [his] position would find [his] work environment to be hostile or abusive.'" *Dickerson*, 238 F.Supp.2d at 83. (citing *Bailey v. Henderson*, 94 F.Supp.2d 68, 73 (D.D.C. 2000))

Mindful that decisions of the D.C. Circuit are direct authority for this Court, *Davis* sets forth the standard for hostile work environment claims under Title VII to the Civil Rights Act of 1964, whereas the claims raised by the Plaintiff in the instant case arise under the DCHRA. While "we often look to cases construing Title VII to aid us in construing the DCHRA," when there is a divergence of legal standards, as there appears to be in this context, the Court looks to the District of Columbia Court of Appeals for direction. Most recently, that Court held that a Plaintiff has a viable hostile work environment claim if he can demonstrate (1) that he is a member of a protected class, (2) that he has been subjected to unwelcome harassment, (3) that the harassment was based on membership in the protected class, and (4) that the harassment is severe and pervasive enough to affect a term, condition or privilege of employment. *Lively v. Flexible Packaging Association, et al.,* 830 A.2d 874 (D.C.2003)(citing *Daka v. Breiner,* 711 A.2d 86, 92 (D.C.1998)); *Howard University v. Best,* 484 A.2d 958 (D.C.1984). The Court will assess Plaintiff's claims, therefore, with the D.C. Court of Appeals' four-pronged test from *Lively*.

■ To establish a hostile work environment claim, a party must establish:

"More than a few isolated incidents must have occurred, and genuinely trivial occurrences will not establish a prima facie case." [*Best, supra,* 484 A.2d] at 980 (citations and footnote omitted.) However, "no specific number of incidences, and no specific level of egregiousness" need be proved. *Id.* [at 980–81]. This means that in determining whether the DCHRA has been violated, the trier of fact should consider . . . the amount and nature of the conduct, the plaintiff's response to such conduct, and the relationship between the harassing party and the plaintiff." *Id.* at 981. *Lively,* 830 A.2d at 888.

■ Additionally, in determining whether the locus of charged events rises to the level of hostility under the DCHRA, the fact finder must focus on "all the circumstances," including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's work performance." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *See Lively,* 830 A.2d at 890.

■ Thus, the trier of fact must determine whether offensive conduct is sufficiently "severe" or "pervasive" such that it constitutes discrimination. *See Barbour v. Browner,* 181 F.3d 1342, 1347 (D.C.Cir.1999)(*quoting Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

■ The Plaintiff's opposition notes specific instances of particularly egregious, sexually infused comments made to the Defendant. (Opposition at 19.) By way of example, Plaintiff contends that Julie Giblin, the General Manager of the Georgetown location and Regan's direct supervisor told him, in front of other employees that he reminded her of "Pee–Wee Herman," that "no woman could ever be interested in him sexually," and that "the only sexual gratification he would ever experience would have to come by his own hand." (Opposition at 6.) Furthermore, on one occasion, a fellow co-worker, Jennifer Bezdicek, allegedly pulled down her pants in front of Regan in the management office and revealed her underwear to him. (*Id.*) Although, "there is no precise formula for when a working environment becomes so hostile as to be actionable," *Dickerson,* 238

F.Supp.2d at 83, these instances reasonably create a potent and sexually charged mixture, and therefore, must be put before the trier of fact.

A reasonable jury could conclude, based on this evidence, that the incidents alleged were sufficiently pervasive and severe as to be unlawful under the DCHRA. The Plaintiff's hostile work environment claim survives summary judgment.

### C. Retaliation

 Under the DCHRA, it is unlawful for an employer "to retaliate against an employee due to [his] opposition to any practice made unlawful by the DCHRA." *Grant v. May Dep't Stores Co.*, 786 A.2d 580 (D.C.2001). To establish a *prima facie* case of retaliation, the Plaintiff must establish: (1) that he engaged in statutorily protected activity; (2) that adverse personnel action was taken by the employer against the Plaintiff; and (3) that a causal connection exists between the two. *Id.; See Millstein v. Henske*, 722 A.2d 850 (D.C.1999); *See also Howard University v. Green*, 652 A.2d 41, 45 (D.C.1994).

The substance of the Plaintiff's retaliation claim is that he was discharged from his position as a proximate result of the complaints made by the Plaintiff regarding a "sexually and racially hostile work environment" at the Daily Grill restaurant generally, as well as a complaint regarding sexually harassing behavior from his direct manager, Julie Giblin. (Opposition at 22.) If true, as the Court must assume for purposes of a determination on a motion for summary judgment, these actions constitute statutorily protected activity as they involve complaints made regarding statutorily prohibited conduct.

Termination of employment constitutes adverse action. *See Brown v. Brody*, 199 F.3d 446 (D.C.Cir.1999) *citing Doe v. Dekalb County School Dist.*, 145 F.3d 1441 (11th Cir.1998). The dispute, therefore, centers around whether the Plaintiff can make a minimal showing that there is some causal connection between the protected activity and his termination.

The Plaintiff alleges that he complained to his supervisors about a hostile work environment as late as April 23, 2002. The Defendant was discharged from his employment three days later. Causation is often demonstrated by temporal proximity between the statutorily protected activity and the adverse personnel action. *Clark County School District v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *See Ampofo v. National Rehabilitation Hospital*, 66 Fed.Appx. 209, 2003 WL 21401830 (D.C.Cir.2003). When the temporal proximity is relatively close, the Court's can infer causation. *Id.* In this case, there is almost no temporal gap between the protected activity and termination of employment. Put another way, the temporal proximity is extremely close, raising a strong inference that there is a causal connection between the two. The Defendant's claim that the Plaintiff can show "no link" (Motion at 10) is incorrect.

Under the DCHRA, once the Plaintiff has established a *prima facie* case of retaliation, the burden shifts to the Defendant to show that there were, in fact, non discriminatory reasons motivating their actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *See Singletary v. District of Columbia*, 225 F.Supp.2d 43, 55–56 (D.D.C.2002)(holding that the same burden shifting framework used for discrimination cases under Title VII applies to cases brought under the DCHRA).

 In this case, the Defendant claims that the Plaintiff was terminated because other employees complained that they had been sexually harassed by the Plaintiff.

(Motion at 11.) While these are certainly non-discriminatory and legitimate reasons for terminating an individual's employment, the Court also finds that the Plaintiff has provided sufficient evidence that these reasons may be pretextual. *See Id.* According to the Plaintiff, the investigation into complaints regarding alleged sexual harassment made by other employees about the Plaintiff, was completed April 5, 2002. (Complaint at ¶ 34.) It is puzzling that it took Grill Concepts twenty-one days to terminate the Plaintiff's employment if the basis for the personnel action was indeed the conclusions reached from the investigation. It is equally, if not more, likely that Regan's intervening hostile work environment complaint, and not the conclusions of the investigation, was the direct cause of the employer's decision to "move on and let [Regan] go." (Opposition at 15, citing a statement made by Shriver, a supervising employee, regarding Regan's employment.)

In this case sexual harassment claims are made both by and against the Plaintiff. Either one may be the cause of the Defendant's decision to terminate the Plaintiff's employment. That determination, however, is one of fact, not law. Therefore, the Plaintiff's claim of retaliation survives summary judgment.

## IV. CONCLUSION

The Court finds that the Plaintiff has made a *prima facie* case of gender discrimination, hostile work environment, and retaliation under the DCHRA. For these reasons, the Defendant's Motion for Summary Judgment is hereby **DENIED**.