United States Court of Appeals,

Eleventh Circuit.

No. 95-3242.

Robert FREDETTE, Plaintiff-Appellant,

v.

BVP MANAGEMENT ASSOCIATES, Royal Palace Hotel Associates;  Buena Vista Hospitality Group, Defendants-Appellees.

May 22, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-325-CIV-ORL-18), G. Kendall Sharp, Judge.

Before ANDERSON, Circuit Judge, and KRAVITCH and HENDERSON, Senior Circuit Judges.

ANDERSON, Circuit Judge:

Appellant Robert Fredette brought this action against BVP Management Associates ("BVP"), alleging that Dana Sunshine, the male maitre d' or manager of BVP's restaurant, sexually harassed him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* and in violation of the Florida Human Rights Act of 1977, as amended, Fla.Stat. ch. 760 *et seq.*[1]  BVP sought summary judgment, which the magistrate judge recommended be denied.  The district court rejected the recommendation of the magistrate judge and granted summary judgment in favor of BVP, concluding that Fredette had not created an issue of fact regarding the causal element of his sexual harassment claim—i.e., that the harassment occurred "because of sex."  On

---

[1]Fredette originally sued other defendants as well as BVP, but as the case comes to us on appeal the only remaining defendant is BVP.  Similarly, plaintiff originally also made a claim under the Fair Labor Standards Act, but that claim was settled and is no longer part of the case.

appeal, appellee BVP argues that we should affirm the summary judgment because same-sex harassment claims are wholly outside the purview of Title VII. Because we disagree with both the district court and the appellee, we reverse.

## I. BACKGROUND

In the summary judgment posture of this case, the magistrate judge properly accepted Fredette's proffered evidence as true and resolved all reasonable inferences of fact in his favor. The district court, noting that BVP did not object to the magistrate judge's statement of the facts, accepted the facts as set out by the magistrate judge. For purposes of this appeal, we may abbreviate the statement of the facts, providing only enough to make it apparent that this appeal involves both quid pro quo sexual harassment and hostile environment sexual harassment arising from repeated instances of propositions for sexual favors. Fredette was a waiter in BVP's restaurant, and Mr. Sunshine, who is homosexual, was the maitre d' or manager. Fredette proffered evidence from which a factfinder could conclude that Fredette's supervisor, Mr. Sunshine, repeatedly propositioned him, offering employment benefits in exchange for Fredette's providing sexual favors to Mr. Sunshine, and when Fredette refused to comply and later reported the matter to management that Mr. Sunshine retaliated against Fredette in various work-related ways. There was similar evidence with respect to other male victims, and there was evidence that Mr. Sunshine provided work-related benefits to another male waiter who

did accede to Mr. Sunshine's propositions.[2]

## II. ISSUE

The single issue presented in this appeal is whether, under the circumstances of this case, the sexual harassment of a male employee by a homosexual male supervisor is actionable under Title VII.[3]

## III. DISCUSSION

We begin with the language of the statute. Title VII of the Civil Rights Act of 1964 reads in relevant part:

> It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....

42 U.S.C. § 2000e-2(a)(1). We note first that the statute prohibits an "employer," whether male or female, from discriminating against "any individual," whether male or female. There is simply no suggestion in these statutory terms that the cause of action is limited to opposite gender contexts. Next we focus on the statute's causation requirement—i.e., that the discrimination occurs "because of such individual's ... sex." In

---

[2]Although BVP does not set out a factual issue in its brief, it does attempt to belittle Fredette's proffered evidence amounting to quid pro quo harassment, arguing that the evidence made clear that Mr. Sunshine's propositions for sexual favors and his real or threatened retaliation were either "ludicrous" or mere "braggadocio." Suffice it to say that our review of the record readily persuades us that the magistrate judge did not err in concluding that there were genuine issues of fact in this regard. Thus, in the instant summary judgment posture, we must assume that the case involves quid pro quo harassment.

[3]The briefs on appeal assume that the Florida law claim will track the Title VII claim with respect to this issue. We accept the parties' assumptions, and accordingly our holding applies also to Fredette's claim under the Florida Human Rights Act.

the paradigm harassment case, where a heterosexual male makes unwelcome advances toward a female, we have readily concluded that the harassment occurred "because of sex." In *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982), we said:

> In the typical case in which a male supervisor makes sexual overtones to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion. It will therefore be a simple matter for the plaintiff to prove that but for her sex, she would not have been subjected to sexual harassment.

*Id.* at 904. We think our observation in *Henson* is equally applicable to the situation where a homosexual male propositions another male. The reasonably inferred motives of the homosexual harasser are identical to those of the heterosexual harasser—i.e., the harasser makes advances towards the victim because the victim is a member of the gender the harasser prefers. Fredette proffered evidence from which a reasonable factfinder could conclude that he was the victim of sexual advances to which members of the opposite gender were not subjected. This was sufficient to survive summary judgment as to causation.

We next look to the legislative history of Title VII. Appellee has cited nothing, and we find nothing in the legislative history that suggests an express legislative intent to exclude same-sex harassment claims from the purview of Title VII. Instead, BVP argues by inference, suggesting that the legislative focus on discrimination against women by male-dominated employers indicates that Congress did not intend to provide a remedy for same-sex harassment. The obvious Congressional focus on discrimination against women has not precluded the courts from extending the protections of Title VII to men. *Newport News Shipbuilding & Dry*

*Dock Co. v. E.E.O.C.,* 462 U.S. 669, 681-82, 103 S.Ct. 2622, 2630, 77 L.Ed.2d 89 (1983) ("Male as well as female employees are protected against discrimination [under Title VII]."). Similarly, we conclude that the legislative history does not preclude our holding that same-sex harassment, at least in the instant circumstances, is actionable under Title VII.

The EEOC's interpretation of Title VII provides further support for appellant's argument that same-sex sexual harassment is actionable in the instant circumstances.[4] The EEOC Compliance Manual states in relevant part:

> The victim does not have to be of the opposite sex from the harasser. Since sexual harassment is a form of sex discrimination, the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex. The victim and the harasser may be of the same sex where, for instance, the sexual harassment is based on the victim's sex (*not* on the victim's sexual preference) and the harasser does not treat employees of the opposite sex the same way.

EEOC Compliance Manual (CCH) § 615.2(b)(3) (1987) (emphasis in original). The Compliance Manual in fact uses as an example of actionable same-sex harassment a case identical to the one before us today:

> Example 1—If a male supervisor of male and female employees makes unwelcome sexual advances toward a male employee because the employee is male but does not make similar advances toward female employees, then the male supervisor's conduct may constitute sexual harassment since the disparate treatment is

---

[4]*See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) ("[EEOC] Guidelines, " "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance...." ' " (quoting *General Electric Co. v. Gilbert,* 429 U.S. 125, 141-42, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976)) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944))).

based on the male employee's sex.

*Id.*

Looking to the relevant case law, we find that the Supreme Court has not addressed the issue of same-sex sexual harassment. The closest analogy in the Supreme Court case law involves reverse discrimination. In *Johnson v. Transportation Agency, Santa Clara County,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), a male plaintiff brought a Title VII action for sex discrimination based on the county's decision to promote a female applicant to the position of road dispatcher. The facts of *Johnson* clearly show that the decision alleged to be discriminatory was made by another man. *Id.* at 624-26, 107 S.Ct. at 1448. Notwithstanding the fact that the allegation was one of same-sex discrimination, the Court addressed the merits of whether or not discrimination in violation of Title VII had taken place. *See also Wilson v. Bailey,* 934 F.2d 301 (11th Cir.1991), and *McQuillen v. Wisconsin Educ. Ass'n Council,* 830 F.2d 659 (7th Cir.1987), *cert. denied,* 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988) (both addressing the sex discrimination claims of male plaintiffs without assigning any significance to the fact that the relevant employment decisions were made by another male). We recognize that the cited opinions do not squarely address the issue of whether same-sex gender discrimination is excluded from the compass of Title VII. However, we think the widespread acknowledgement of the viability of reverse-discrimination claims (which often involve the same-sex context) stands as an implicit rejection of BVP's position.

The viability of same-sex harassment claims is also an issue

of first impression in this circuit.[5]  While there is a split of authority amongst the circuits, and also amongst the district courts addressing the issue, we believe that the weight of the case law and the better-reasoned cases support the viability of the particular Title VII claim before us today.

In a case much like the instant case, involving a male victim and repeated sexual advances by a male homosexual, the Sixth Circuit has found an actionable Title VII claim.  *See Yeary v. Goodwill Industries-Knoxville, Inc.,* 107 F.3d 443 (6th Cir.1997). To support its holding, the *Yeary* panel looked initially to the language of the statute, the rationale for the proscription against sexual harassment, and to the EEOC's Compliance Manual.  In answer to the defendant's objection that only "traditional" notions of sex discrimination are actionable under Title VII, the court wrote:

> [T]his case is about as traditional as they come, albeit with a twist.  It is about an employee making sexual propositions to and physically assaulting a coworker because, it appears, he finds that coworker sexually attractive.  This is a scenario that has been found actionable countless times over, when the aggressor is a male and the victim is a female. Likewise, there is no serious question that the same scenario would be actionable in the less typical case when the aggressor is a female and the victim is a male. Consequently, we find no substantive difference between either of those situations and that present here.

*Id*. at 447-48.  As for Title VII's causation requirement, the court concluded that "when a male sexually propositions another male

---

[5]*See Henson v. City of Dundee,* 682 F.2d 897, 905 n. 11 (11th Cir.1982) (dicta) ("Except in the exceedingly atypical case of a bisexual supervisor, it should be clear that sexual harassment is discrimination based upon sex.").  *See also Joyner v. AAA Cooper Transp.,* 597 F.Supp. 537 (M.D.Ala.1983), *aff'd,* 749 F.2d 732 (11th Cir.1984) (table) (unpublished, nonbinding decision affirming a district court finding of Title VII liability in a quid pro quo case involving advances made by a homosexual male supervisor towards a male employee).

because of sexual attraction, there can be little question that the behavior is a form of harassment that occurs because the propositioned male is a male—that is, "because of sex.' " *Id.* at 448.

Similarly, the Fourth Circuit in *Wrightson v. Pizza Hut of America, Inc.,* 99 F.3d 138 (4th Cir.1996), held that a male employee could state a viable Title VII claim for sex discrimination against his employer on account of sexual harassment by his homosexual male supervisor.  As we do, the Fourth Circuit relied upon the plain language of the statute, the case law expounding upon Title VII's causation requirement, and the EEOC's published interpretation of the statute.  We note that the Fourth Circuit has drawn a distinction between cases involving sexual harassment of a male subordinate by a homosexual male perpetrator, i.e., *Wrightson,* and cases involving a heterosexual male perpetrator and a male victim.  In the latter context, the Fourth Circuit has found no viable Title VII claim.  *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191 (4th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996).  The *McWilliams* panel found that the conduct in that case did not constitute harassment "because of" sex or gender, but rather constituted harassment because of the victim's perceived prudery, shyness, or other vulnerability.  The distinction the Fourth Circuit has recognized is easily perceived.  We readily understand a homosexual male's advances towards another male to occur "because of sex";  we understand this both out of common experience and in recognition of the parallels between this situation and the paradigm case of

harassment involving a heterosexual male and a female victim, in which we have determined that the causation element of Title VII is easily met. Whether the kind of harassment at issue in *McWilliams*—i.e., heterosexual males' razzing and hazing of other males—occurs "because of sex" is a more difficult question, both in terms of common experience and law. Today, we need not decide that more difficult question; we need only recognize that the hesitations underlying the Fourth Circuit's holding in *McWilliams* are not implicated by the case before us today.[6] *See Yeary,* 107 F.3d at 448 (deciding the case before the panel without resolving the question regarding the viability of same-sex harassment claims not involving homosexual advances).

A number of other circuits have suggested in dicta that same-sex Title VII claims might be viable at least in some circumstances. In a 1977 case recognizing a sex discrimination cause of action for quid pro quo harassment involving a female employee and a male supervisor, the Court of Appeals for the District of Columbia suggested that similar claims involving parties of the same gender would also constitute actionable sex discrimination. *See Barnes v. Costle,* 561 F.2d 983, 990 n. 55 (D.C.Cir.1977) ("It is no answer [to the conclusion that the harassment at bar constituted sex discrimination] to say that a similar condition could be imposed on a male subordinate by a heterosexual female superior, or upon a subordinate of either

---

[6]We note that although the precise scope of the decision is somewhat unclear, the Eighth Circuit's decision in *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372 (8th Cir.1996), could be construed to hold that a viable Title VII claim may be stated in circumstances like those involved in *McWilliams.*

gender by a homosexual superior of the same gender.  In each instance, the legal problem would be identical to that confronting us now—the exaction of a condition which, but for his or her sex, the employee would not have faced.").[7]  Similarly, the Third Circuit summarily rejected the argument that advances made toward a female employee were not sex discrimination because the male supervisor could also have propositioned male employees:  "We would note that, although irrelevant, the situation posed in PSE & G's hypothetical would cause no great concern.  Title VII prohibits discrimination against men as well as women." *Tomkins v. Public Serv. Elec. & Gas Co.,* 568 F.2d 1044, 1047 n. 4 (1977).  The Seventh Circuit has noted, "Sexual harassment of women by men is the most common kind, but we do not mean to exclude the possibility that sexual harassment of men by women, or men by other men, or women by other women would not also be actionable in appropriate cases." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995).[8]  Finally, the Ninth Circuit has left the door open to same-sex harassment cases, noting in a hostile environment case brought by a woman, "[W]e do not rule out the possibility that *both* men and women working at Showboat have viable claims against Trenkle [a male supervisor] for sexual harassment."  *Steiner v.*

---

[7]*See also Bundy v. Jackson,* 641 F.2d 934, 942 n. 7 (D.C.Cir.1981) (revisiting this passage in *Barnes* and noting that "in each instance the question is one of but-for causation: would the complaining employee have suffered the harassment had he or she been of a different gender?").

[8]*See also McDonnell v. Cisneros,* 84 F.3d 256, 260 (7th Cir.1996) ("Analysis is complicated by the fact that a difference in sex is not a necessary condition of sexual activity and hence (most courts think) of sexual harassment.").

*Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir.1994) (emphasis in original), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995).[9]

Numerous district courts have concluded that same-sex harassment claims (both of the hostile environment and quid pro quo varieties) can be actionable under Title VII.[10]

[9]Several judges in separate opinions have suggested that same-sex harassment may be actionable. *See Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 148 (2d Cir.1993) (Van Graafeiland, J., concurring) ("[H]arassment is harassment regardless of whether it is caused by a member of the same or opposite sex."), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). In *Hopkins v. Baltimore Gas and Elec. Co.,* 77 F.3d 745 (4th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996), Judge Niemeyer addressed the viability of same-sex harassment claims, concluding that a plaintiff who could prove that he or she suffered otherwise actionable sexual harassment because of gender could state a claim regardless of the sex of the offender. *Id.* at 752. To Judge Niemeyer, the "more difficult question" was "what proof is necessary to demonstrate that harassment is because of the employee's gender...." *Id.* He concluded that where the harasser and the victim are of the same gender, a presumption exists that sexually suggestive conduct is not based on gender because "such sexually suggestive conduct [between members of the same gender] is usually motivated by entirely different reasons [than gender]." Judge Niemeyer contrasted this presumption to that present in opposite-sex harassment cases: "When someone sexually harasses an individual of the opposite gender, a presumption arises that the harassment is "because of' the victim's gender. This presumption is grounded on the reality that sexual conduct directed by a man, for example, toward a woman is usually undertaken because the target is female and the same conduct would not have been directed toward another male." *Id.* Judge Niemeyer concluded that in order to prevail in a Title VII action, the same-sex harassment plaintiff would have to overcome a presumption that the harassment was not based on sex. *Id.* at 753.

[10]*See, e.g., McCoy v. Macon Water Auth.,* --- F.Supp. ---- (M.D.Ga. Feb. 5, 1997); *Williams v. District of Columbia,* 916 F.Supp. 1 (D.D.C.1996); *Waag v. Thomas Pontiac, Buick, GMC, Inc.,* 930 F.Supp. 393 (D.Minn.1996); *Tanner v. Prima Donna Resorts, Inc.,* 919 F.Supp. 351 (D.Nev.1996); *McCoy v. Johnson Controls World Servs., Inc.,* 878 F.Supp. 229 (S.D.Ga.1995); *Prescott v. Indep. Life & Accident Ins. Co.,* 878 F.Supp. 1545 (M.D.Ala.1995); *Raney v. District of Columbia,* 892 F.Supp. 283

Although we believe that the weight of the case law and the better-reasoned cases support Fredette's claim, there is a split in the circuits and in the case law.  The only circuit court of appeals adopting a position inconsistent with holding in favor of Fredette is the Fifth Circuit.  *Oncale v. Sundowner Offshore Servs., Inc.,* 83 F.3d 118 (5th Cir.1996);  *Garcia v. Elf Atochem North America,* 28 F.3d 446 (5th Cir.1994).  The legal principle which apparently emerges from  *Oncale* and *Garcia* is that "all same-sex sexual harassment claims" are barred.  *Oncale,* 83 F.3d at 120.  However, it is difficult to accord much persuasive force to these two decisions.  The *Garcia* holding was the last of several independent and alternative holdings and was accompanied by no reasoning whatsoever.  *Oncale* also provided no rationale to support the holding;  rather, it limited its discussion to the reach of the cryptic *Garcia* opinion, specifically whether the relevant language in *Garcia* was dicta or binding precedent. The  *Oncale* panel, recognizing the fact that indications in other circuit court opinions and many district court opinions were to the contrary, emphasized that it was bound by *Garcia.*  Moreover, it seems from the statement of the facts in *Garcia* that the harassing conduct at issue there was similar in nature to that in *McWilliams,* i.e.,

---

(D.D.C.1995);  *Griffith v. Keystone Steel and Wire,* 887 F.Supp. 1133 (C.D.Ill.1995);  *Sardinia v. Dellwood Foods, Inc.,* 69 Fair Empl.Prac.Cas. (BNA) 705, 1995 WL 640502 (S.D.N.Y.1995);  *King v. M.R. Brown, Inc.,* 911 F.Supp. 161 (E.D.Pa.1995);  *Nogueras v. Univ. of Puerto Rico,* 890 F.Supp. 60 (D.Puerto Rico 1995); *E.E.O.C. v. Walden Book Co., Inc.,* 885 F.Supp. 1100 (M.D.Tenn.1995);  *Ecklund v. Fuisz Tech., Ltd.,* 905 F.Supp. 335 (E.D.Va.1995);  *Joyner v. AAA Cooper Transp.,* 597 F.Supp. 537 (M.D.Ala.1983), *aff'd,* 749 F.2d 732 (11th Cir.1984) (table); *Wright v. Methodist Youth Servs., Inc.,* 511 F.Supp. 307 (N.D.Ill.1981).

teasing and harassment with sexually-focused speech or conduct, but *not* involving a male superior's solicitation of sexual favors from a male subordinate on condition of work benefits or detriment. In other words, the Fifth Circuit case law stems from a case that, for the reasons set out above, presented far more difficult questions than the one before us today.[11]

Many cases rejecting same-sex harassment claims rely upon *Goluszek v. H.P. Smith,* 697 F.Supp. 1452 (N.D.Ill.1988), this category possibly including the Fifth Circuit case law.[12] While the facts in *Goluszek* clearly involve conduct of the kind involved in *McWilliams,* the *Goluszek* court relied upon an expansive rationale. According to the *Goluszek* court, a Title VII claim is viable only in a context where the work environment is dominated by members of one gender and the workplace environment is hostile to the other gender, i.e., treats members of the other gender as inferior. *Goluszek* stated that Congress was concerned with "an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discreet and vulnerable group." *Id.* at 1456. Some courts have followed the *Goluszek* decision closely, concluding that on the facts presented the plaintiff did not show an anti-male environment and therefore could not state a claim

---

[11]Although it is unclear from the brief statement of the facts in *Oncale* whether it might have involved homosexual solicitation of sexual favors on condition of work benefits or detriment, the court did not address the potential significance of that fact as explained in this opinion and in *Wrightson.*

[12]Although *Garcia* includes no supporting rationale, it does cite *Goluszek.*

under Title VII.[13]   Other decisions have accepted the broader language of the Fifth Circuit in *Garcia,* barring all same-sex harassment claims.[14]

We readily conclude that the *Goluszek* rationale is flawed.[15] The law is well established that Title VII protects men as well as women, without regard to whether the workplace is male-dominated. This is most obvious in cases involving male plaintiffs' challenges to affirmative action plans enacted to promote the advancement of women.  Because employers typically adopt such plans precisely because the environment is male-dominated, the paradigm reverse-discrimination plaintiff is one whose workplace is dominated by members of his own gender.  For example, in*Johnson v. Transportation Agency, Santa Clara County,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), the male plaintiff worked in a county transportation agency that had the following composition as of the year before the contested employment decision:

Specifically, 9 of the 10 Para-Professionals and 110 of the

---

[13]*See Vandeventer v. Wabash Nat. Corp.,* 887 F.Supp. 1178 (N.D.Ind.1995);  *Fleenor v. Hewitt Soap Co.,* 67 Fair Empl.Prac.Cas. (BNA) 1625, 1995 WL 386793 (S.D.Ohio 1994), *aff'd on other grounds,* 81 F.3d 48 (6th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 170, 136 L.Ed.2d 112 (1996).

[14]*See Schoiber v. Emro Marketing Co.,* 941 F.Supp. 730 (N.D.Ill.1996);  *Torres v. National Precision Blanking,* 943 F.Supp. 952 (N.D.Ill.1996);  *Benekritis v. Johnson,* 882 F.Supp. 521 (D.S.C.1995);  *Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822 (D.Md.1994), *aff'd on other grounds,* 77 F.3d 745 (4th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

[15]Of course, we do not mean to suggest that the situation described as actionable in *Goluszek*—i.e., harassment in an environment dominated by the opposite gender—is not actionable; we mean only to say that we do not agree it is the *only* situation that gives rise to a claim under Title VII.

145 Office and Clerical Workers were women. By contrast, women were only 2 of the 28 Officials and Administrators, 5 of the 58 Professionals, 12 of the 124 Technicians, none of the Skilled Craft Workers [the classification of the position at issue in the case], and 1 ... of the 110 Road Maintenance Workers.

*Id.* at 634, 107 S.Ct. at 1453. However, we find no suggestion either in *Johnson* or in the other case law that such plaintiffs cannot state a viable Title VII claim simply because they work in an environment dominated by members of their own gender.[16]

Finally, we address concerns raised by the appellee regarding the implications of this case for the law regarding discrimination based on sexual orientation. BVP argues that to hold in favor of the appellant is, in effect, to protect against discrimination on the basis of sexual orientation. The short but complete answer to this argument is to make clear the narrowness of our holding today. We do not hold that discrimination because of sexual orientation is actionable. Rather, we hold today that when a homosexual male supervisor solicits sexual favors from a male subordinate and conditions work benefits or detriment on receiving such favors, the male subordinate can state a viable Title VII claim for *gender*

---

[16]Similarly, we find no suggestion that white plaintiffs challenging racial affirmative-action programs cannot state viable Title VII claims simply because their workplace is dominated by members of their own race. In *United Steelworkers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), the Supreme Court addressed the merits of a Title VII claim brought by white plaintiffs challenging a racial affirmative-action plan for a workplace where blacks held only 2% of the positions at issue and made up less than 15% of the entire workforce. *See Peightal v. Metropolitan Dade County,* 940 F.2d 1394 (11th Cir.1991) (considering the Title VII claims of a white male plaintiff regarding an affirmative-action plan adopted to promote women and racial minorities at a time when 75% of the firefighters in the department were white and 99% were male), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992).

discrimination.  We note that the EEOC has also drawn a distinction between the conduct at issue here, which is actionable as gender discrimination, and discrimination because of sexual orientation. EEOC Compliance Manual (CCH) § 615.2(b)(3) (1987).

## IV. CONCLUSION

In summary, we conclude that the plain language of Title VII provides protection against the conduct at issue here where a homosexual male superior has solicited sexual favors from a male subordinate and conditioned work benefits or detriment on receiving such favors.  We find nothing to the contrary in the legislative history.  Our holding is in accord with the interpretation of the EEOC, and is in accord with the weight of the case law and the better-reasoned cases.

For the foregoing reasons, the judgment of the district court is reversed with respect to both the claim of quid pro quo sexual harassment and the claim for hostile environment sexual harassment. The case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.