[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 15, 2003
THOMAS  K. KAHN
CLERK

No. 02-12472

D. C. Docket No. 00-01745 CV-N-S

THOMAS SNIDER,
JOHN PONDER, et al.,

Plaintiffs-Appellants,

versus

JEFFERSON STATE COMMUNITY
COLLEGE, R. L. DRENNEN,

Defendants,

WILLIAM SHELNUTT,
JUDY MERRITT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____
**(September 15, 2003)**

Before EDMONDSON, Chief Judge, BARKETT and COX, Circuit Judges.

EDMONDSON, Chief Judge:

Thomas Snider, John Ponder, Tommy Diltz, and Benny Gilcrest ("Plaintiffs"), security officers employed at Jefferson State Community College ("JSCC"), brought suit under 42 U.S.C. § 1983 against Judy Merritt, the president of JSCC, and R.L. Drennen, the Dean of Business Operations at JSCC ("Defendants").[1]

Plaintiffs alleged that between 1983 and July 1998, they and other male employees were the victims of same-sex sexual harassment committed by their supervisor, William Shelnutt.[2] At that time, Shelnutt was the Chief of Security at JSCC. Plaintiffs alleged that Defendants knew or reasonably should have known about Shelnutt's conduct, had a duty to prevent this conduct, and failed to stop the conduct in violation of Plaintiffs' right to equal protection under the Fifth and Fourteenth Amendments.

Defendants moved to dismiss the complaint based on, among other things, qualified immunity grounds. The district court assumed, for purposes of evaluating the qualified-immunity defense, that Plaintiffs stated a cognizable constitutional claim. The district court concluded that, at the time of the alleged

---

[1] R.L. Drennan has since retired from JCSS.

[2] Although Shelnutt was named as a defendant he is not an appellee in this case.

2

violations, it was not clearly established that same-sex sexual harassment violated the Equal Protection clause and that Defendants were entitled to qualified immunity. The district court therefore granted the motion to dismiss.

On appeal, Plaintiffs assert that sufficient case law existed to establish the contours of their right to be free from same-sex sexual harassment under the Equal Protection Clause and that the district court erred by granting Defendants qualified immunity.

The defense of qualified immunity may be raised and addressed on a motion to dismiss and will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001) (quoting Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997)). Whether the complaint alleges the violation of a clearly established right is a question of law which we review de novo, accepting the facts alleged as true and drawing all reasonable inferences therefrom in plaintiff's favor. Id.

Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 122 S.Ct. 2508, 2515 (2002) (citation omitted). The

3

burden rests on the plaintiff to show that qualified immunity is not appropriate. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

We recently -- long after the events underlying the present case -- declared that the Equal Protection Clause protects against same-sex discrimination. See Downing v. Bd. of Trustees of the Univ. of Ala., 321 F.3d 1017, 1024 (11th Cir. 2003). Accepting Plaintiffs' allegations as true -- that Defendants knew or should have known that Shelnutt constantly touched Plaintiffs and other male employees in the Security Department in a sexually inappropriate manner and constantly made sexual remarks and gestures to Plaintiffs and other male employees -- such conduct would violate the Equal Protection Clause.[3] Therefore, the important question is whether this right was already clearly established at the time of the alleged violations.

Officials are entitled to fair warning from the preexisting law that their alleged acts, at the time the acts occurred, were unconstitutional. Hope, 122 S.Ct. at 2515. For a constitutional right to be clearly established in a given case, the right's contours must be so clear that every, objectively reasonable official must

---

[3] Although Plaintiffs allege that Shelnutt acted against male employees, we note that Plaintiffs do not specifically state that Shelnutt did not make such advances against the female employees under his supervision. See Cross, 49 F.3d at 1508. For our present purposes, because Plaintiffs are raising Equal Protection claims and assert that Shelnutt sexually harassed male employees, we infer that Plaintiffs are alleging that Shelnutt's conduct was only directed at male employees.

4

understand that what the defendant, in the context of the circumstances of the case, is doing clearly violates the right. See Vinyard v. Wilson, 311 F.3d 1340, 1353 (11th Cir. 2002). That the very act (or something materially similar to it) in question has previously been held unlawful by a court is not always necessary. But in the light of preexisting law, the unlawfulness must be apparent: plain, clear, obvious. Unless the government official's act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent official or one who was knowingly violating the law would have committed the act, the official is entitled to qualified immunity. See Malley v. Briggs, 106 S.Ct. 1092, 1096-97 (1986). "When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." Marsh v. Butler County, Ala., 268 F.3d 1014, 1032-33 n. 10 (11th Cir. 2001) (en banc).

Although this Court (1997) and the Supreme Court (1998) -- during the time in which the alleged harassment was occurring -- had concluded that a same-sex sexual harassment claim was actionable under Title VII against a private employer, this precedent could not fairly put Defendants on notice that their alleged conduct clearly violated a federal constitutional right. See generally

5

Oncale v. Sundowner Offshore Servs., Inc., 118 S.Ct. 998, 1001-02 (1998)

(concluding that same-sex sexual harassment is actionable under Title VII);

Fredette v. BVP Mgmt. Assocs., 112 F.3d 1503, 1510 (11th Cir. 1997) (same).[4]

Title VII originally was created to reach conduct that the Constitution did

not reach; and the statute and Constitution are not always concurrent. See

Washington v. Davis, 96 S.Ct. 2040, 2047 (1976) (in disparate impact context

stating "We have never held that the constitutional standard for adjudicating

claims of invidious racial discrimination is identical to the standards applicable

under Title VII, and we decline to do so today"); see also Bass v. Bd. of County

Comm'rs, Orange County, Fla., 256 F.3d 1095, 1103 (11th Cir. 2001) (noting that,

although the analyses for Title VII and Equal Protection claims are closely related,

the Supreme Court in Johnson v. Transp. Agency, Santa Clara County, Calif, 107

S.Ct. 1442, 1452 (1987) recognized that it "do[es] not regard as identical the

constraints of Title VII and the Federal Constitution"). In 1972, Congress

extended the coverage of Title VII of the Civil Rights Act of 1964 to allow suits

---

[4] We have written that "[w]hen section 1983 is used as a parallel remedy for violation of section 703 of Title VII [42 U.S.C. § 2000e-2], the elements of the two causes of action are the same." Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n. 16 (11th Cir.1982) (emphasis added). This observation, by itself however, would not compel every objectively reasonable government official to believe that, if his conduct violated Title VII, it would also necessarily violate the Constitution. Instead, it would only put the employer on notice that, if same-sex harassment was actionable under both the Equal Protection Clause and Title VII, the elements of the two causes of action would be the same.

against state and local government employers under the same conditions as private employers. See In re: Employment Discrimination Litig. Against the State of Ala., 198 F.3d 1305, 1319 (11th Cir. 1999). Although Section 5 of the Fourteenth Amendment authorizes Congress to abrogate state sovereign immunity to enforce the rights guaranteed by the Fourteenth Amendment, Congress does not have the power to alter the "substance of the Fourteenth Amendment's restrictions on the States." Id. (quoting City of Boerne v. Flores, 117 S.Ct. 2157, 2164 (1997)). Thus, Title VII may be used against the states only to enforce rights found within the borders of the Fourteenth Amendment.

The Supreme Court has only considered the issue of same-sex sexual harassment in the context of a Title VII action against a private employer. See Oncale, 118 S.Ct. 998. In the pertinent 1998 decision, the Supreme Court pointed out that the state and federal courts had taken a "bewildering variety of stances" on same-sex sexual harassment under Title VII. Id. at 1002. The Supreme Court concluded that, although male-on-male sexual harassment in the workplace was "assuredly not the principal evil Congress was concerned with when it enacted Title VII . . . statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils . . .." Id. Because Oncale involved a Title VII action against a private employer, the issue of whether same-sex harassment also violated

the Equal Protection Clause was not considered by the Supreme Court.[5] Oncale, 118 S.Ct. 998.

Although some people may well have reasonably guessed earlier that same-sex sexual harassment was a violation of the Equal Protection Clause, the answer was debatable, not free from cloudiness and truly settled, before our 2003 decision -- with its six-page explaining opinion -- in Downing, 321 F.3d 1017; and officials cannot be "expected to predict the future course of constitutional law." Wilson v. Layne, 119 S. Ct. 1692, 1701 (1999) (quoting Procunier v. Navarette, 98 S.Ct. 855, 860 (1978)). Neither the Supreme Court's decision in Oncale, 118 S.Ct. 998, nor our decision in Fredette, 112 F.3d 1503, provided clear notice to government officials that same-sex sexual harassment violated the Equal Protection Clause.[6]

---

[5] In a similar way, because Fredette, 112 F.3d 1503, also involved a Title VII action against a private employer, this Court did not consider whether same-sex harassment also violated the Equal Protection Clause.

[6] It was clearly established at the time of the alleged harassment here that, in the context of different-gender harassment, the Equal Protection Clause provided a right to be free from unlawful sexual harassment in public employment. See Cross, 49 F.3d at 1503. In Downing, we wrote in 2002 that Cross "held that the elements of the equal protection and Title VII claims were identical." Downing, 321 F.3d at 1022. Even now accepting Downing's interpretation and application of Cross, we do not think that it was certain and clear in 1998 that Cross, in 1995, had decided that every act that violated Title VII necessarily violated the Constitution. The decision in Cross involved a male supervisor harassing his female subordinates and did not apply with obvious clarity to same-sex sexual harassment. The Supreme Court's observation in Oncale that the courts had taken a "bewildering variety of stances" on the issue of same-sex sexual harassment in the Title VII context, seems pretty nearly true in the Equal Protection context. We have found (or had called to our attention) only two Circuits that, at the time the alleged harassment in this case was taking place, had spoken to the issue of whether same-sex sexual harassment could violate the Equal Protection

8

A male supervisor sexually harassing male employees engages in contemptible conduct. But not all contemptible conduct violates the Constitution. We cannot say that the Equal Protection Clause or case law before Downing provided Defendants with fair and clear warning that a male supervisor sexually harassing male employees would violate the employees' federal constitutional rights. Although officials, when the preexisting law applies with obvious clarity, can be put on notice that their conduct violates established law even in novel factual circumstances, we stress that officials cannot be "expected to predict the future course of constitutional law." Wilson, 119 S. Ct. at 1701. Because the pre-existing case law available to Defendants at the time of the alleged harassment did not make apparent that the Equal Protection Clause protected against same-sex sexual harassment, Defendants are entitled to immunity. See Vinyard, 311 F.3d at 1352-53.

AFFIRMED.

---

Clause. Although the Seventh Circuit had concluded that same-sex sexual harassment in public employment could violate the Equal Protection Clause, Doe by Doe v. City of Belleville, Ill., 119 F.3d 563, 596-97 (7th Cir. 1997), the decision was vacated by the Supreme Court less than eight months later, City of Belleview v. Doe by Doe, 118 S.Ct. 1183 (1998). The Fourth Circuit had concluded that same-sex sexual harassment claims were not actionable under the Equal Protection Clause if the harassers and the victim were heterosexuals of the same sex. See McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1195 (4th Cir. 1996). In this case, Mr. Shelnutt is, by the way, not alleged to be a homosexual. Most important, Plaintiffs have not directed us to a case --and we have not found a case -- in the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court which had decided that same-sex sexual harassment violated the Equal Protection Clause at the time of the events giving rise to this case. See Marsh, 268 F.3d at 1032-33 n. 10.

9

BARKETT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that any claims based on facts occurring prior to May 1997 are due to be dismissed because, as explained in the majority opinion, qualified immunity would bar them. However, in May 1997 the relevant caselaw clarified that same-sex sexual harassment violated Title VII. Because, as more fully explained below, the law was also clearly established that there is no difference between the scope of Title VII and that of the Equal Protection Clause concerning intentional discrimination in the form of disparate treatment in the public workplace, I believe that the Defendants had adequate notice of the constitutional violation after May 1997.[1] Thus, any claim based on conduct

---

[1] I agree with the majority that qualified immunity operates to insulate governmental officials performing discretionary functions from personal liability "insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a constitutional or statutory right to be deemed "clearly established," "the contours of that right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Further, I agree that "[t]hat the very act (or something materially similar to it) in question has previously been held unlawful by a court is not always necessary," Majority Op. at ____, but rather, the "salient question" is whether the "state of the law" gave the officials "fair warning" that what they were doing violated the statutory or constitutional provision in question. Hope v. Pelzer, 536 U.S. 730, 741 (2002). That is, "the plaintiff need only show that there existed sufficient case law establishing the contours of his or her constitutional rights such that" a reasonable official would be aware of the unlawfulness of his actions. Nicholson v. Ga. Dep't of Human Resources, 918 F.2d 145, 147 (11th Cir. 1990). Hope made clear that the reasoning of earlier cases may provide such "fair warning," even if the cases' specific holdings do not. See Hope, 536 U.S. at 743 ("The reasoning, though not the holding, in a[n earlier] case . . . sent the same message to reasonable officers in that Circuit.").

10

occurring subsequent to that date should not have been dismissed on qualified immunity grounds.

Since at least 1979 it has been established that the Equal Protection Clause provides "a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment." Cross v. Ala. Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1507 (11th Cir. 1995) (citing Davis v. Passman, 442 U.S. 228, 235 (1979)). And Title VII, which since 1972 has applied to public as well as private employers,[2] "is unquestionably appropriate legislation to enforce the [E]qual [P]rotection [C]lause." Scott v. City of Anniston, 597 F.2d 897, 900 (5th Cir. 1979).[3] Thus, during the time of the alleged harassment here, a reasonable official must have known that both the Equal Protection Clause, e.g., Davis, 442 U.S. at 235, and Title VII, e.g., Hardin v. Stynchcomb, 691 F.2d 1364, 1369 & n.16 (11th Cir. 1982), prohibited intentional sexual discrimination in the public workplace. The question, then, is whether a reasonable official in the Defendants' position should have known that same-sex sexual harassment

---

[2] See, e.g., Bazemore v. Friday, 478 U.S. 385, 387 n.1 (1986) (per curiam) (noting March 24, 1972 as "the date Title VII was made applicable to public employers").

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

11

qualified as sexual discrimination and, for our purposes here, whether it so qualified within the meaning of the Equal Protection Clause.

In Fredette v. BVP Management Associates, 112 F.3d 1503 (11th Cir. 1997), this Court held that same-sex sexual harassment is actionable discrimination under Title VII. See id. at 1506 (concluding that "the weight of the case-law and the better reasoned cases support the viability" of such claims). Likewise, less than one year later, the Supreme Court unanimously held "that nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998). Although not all violations of Title VII also violate the Constitution, see City of Boerne v. Flores, 521 U.S. 507, 518 (1997), significantly, there is no difference between the scope of Title VII and the scope of the Equal Protection Clause concerning intentional discrimination in the form of disparate treatment in the public workplace: when utilized as parallel remedies for such discrimination, the elements of a claim under each are identical. See, e.g., Richardson v. Leeds Police Dep't, 71 F.3d 801, 805 (11th Cir. 1995) (per curiam); Cross, 49 F.3d at 1508; Pearson v. Macon-Bibb County Hosp. Auth., 952 F.2d

12

1274, 1281 (11th Cir. 1992).[4]  Accordingly, such parallel claims may be analyzed

together, with no distinctions being drawn between the two.  See, e.g., Pearson,

952 F.2d at 1281 (reversing summary judgment on § 1983 equal protection claim

of intentional racial discrimination "[f]or the[] same reasons" as reversing

summary judgment on Title VII disparate treatment claim because "the substantive

elements of proof are the same under both statutes").[5]

For this reason, once Title VII was clarified as proscribing intentional same-

sex sexual harassment, a reasonable official was given fair notice that such

conduct in the public workplace also violated the Equal Protection Clause.  The

body of law evidencing the connections between Title VII and the Equal

Protection Clause– specifically, that body concerning intentional discrimination in

the form of disparate treatment in public employment, e.g., Richardson, 71 F.3d at

---

[4] I concur that this principle, "by itself . . . , would not compel every objectively reasonable government official" to conclude that a violation of Title VII "would also necessarily violate the Constitution."  Majority Op. at ___ n.4.  However, the point remains that this principle does not stand "by itself," but rather must be considered in the larger context of the "state of the law."  Hope, 536 U.S. at 741.  When properly considered in this manner, the Title VII-Equal Protection Clause nexus, along with the holding that intentional same-sex sexual harassment violated Title VII, constituted "fair warning" to a reasonable official that intentional same-sex sexual harassment in the public workplace also violated the Constitution.

[5] I am not persuaded otherwise by the Supreme Court's statement in Johnson v. Transportation Agency, Santa Clara County, 480 U.S. 616, 632 (1987), which is partially quoted in Bass v. Board of County Commissioners, 256 F.3d 1095, 1103 (2001), that "we do not regard as identical the constraints of Title VII and the Federal Constitution on voluntarily adopted affirmative action plans," primarily because this case does not involve a "voluntarily adopted affirmative action plan[]." Rather, it involves Shelnutt's sexual harassment of males, but not females, in public employment.

13

805; <u>Cross</u>, 49 F.3d at 1508; <u>Pearson</u>, 952 F.2d at 1281– provides the clearly

established "state of the law"[6] for the application of <u>Fredette</u> and <u>Oncale</u> and

comprises an integral part of what must be considered in our qualified immunity

inquiry.[7]  Accordingly, it is appropriate to conclude that a reasonable official with

knowledge of this connection was given fair notice that a violation of Title VII by

intentional same-sex sexual harassment in the public workplace would likewise

violate the Equal Protection Clause.[8]

Therefore, to the extent that the Plaintiffs' claims are predicated on sexually

harassing conduct that occurred prior to May 22, 1997 (the date we issued

<u>Fredette</u>), I agree with the majority that the law at that time concerning same-sex

sexual harassment in public employment was sufficiently unsettled that the

Defendants are shielded by the doctrine of qualified immunity.  However, I would

---

[6] <u>Hope</u>, 536 U.S. at 739.

[7] Recognizing the relevance of Title VII caselaw to allegations of constitutional violations in the qualified immunity context is not without precedent.  <u>See</u> <u>Bator v. State of Hawaii</u>, 39 F.3d 1021, 1028 & n.7 (9th Cir. 1994) (relying on Title VII caselaw to find it clearly established that sex discrimination in the public workplace violated the Equal Protection Clause because "Title VII and equal protection cases address the same wrong:  discrimination," and noting that the differences between Title VII and equal protection claims "do not affect what is prohibited; they affect who can be sued and how the wrong can be remedied").

[8] The connection was expressed in <u>Downing v. Board of Trustees of University of Alabama</u>, 321 F.3d 1017 (11th Cir. 2003), which relied explicitly on the earlier case of <u>Cross</u> in finding "no principled basis for holding that the Equal Protection Clause is implicated in a case of opposite-sex discrimination but not in a case of same-sex discrimination." <u>Id.</u> at 1024.

14

remand to the district court for further proceedings as to any claims alleged to have arisen after our decision in <u>Fredette</u>, when a reasonable official in the Defendants' position was given fair notice that the conduct alleged here violated the Equal Protection Clause.