BARKETT, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that any claims based on facts occurring prior to May 1997 are due to be dismissed because, as explained in the majority opinion, qualified immunity would bar them. However, in May 1997 the relevant caselaw clarified that same-sex sexual harassment violated Title VII. Because, as more fully explained below, the law was also clearly established that there is no difference between the scope of Title VII and that of the Equal Protection Clause concerning intentional discrimination in the form of disparate treatment in the public workplace, I believe that the Defendants had adequate notice of the constitutional violation after May 1997.[1] Thus, any claim *1331 based on conduct occurring subsequent to that date should not have been dismissed on qualified immunity grounds.
Since at least 1979 it has been established that the Equal Protection Clause provides “a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment.” Cross v. Ala. Dep’t of Mental Health & Mental Retardation, 49 F.3d 1490, 1507 (11th Cir.1995) (citing Davis v. Passman, 442 U.S. 228, 235, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)). And Title VII, which since 1972 has applied to public as well as private employers,[2] “is unquestionably appropriate legislation to enforce the [E]qual [Protection [C]lause.” Scott v. City of Anniston, 597 F.2d 897, 900 (5th Cir.1979).[3] Thus, during the time of the alleged harassment here, a reasonable official must have known that both the Equal Protection Clause, e.g., Davis, 442 U.S. at 235, 99 S.Ct. 2264, and Title VII, e.g., Hardin v. Stynchcomb, 691 F.2d 1364, 1369 & n. 16 (11th Cir.1982), prohibited intentional sexual discrimination in the public workplace. The question, then, is whether a reasonable official in the Defendants’ position should have known that same-sex sexual harassment qualified as sexual discrimination and, for our purposes here, whether it so qualified within the meaning of the Equal Protection Clause.
In Fredette v. BVP Management Associates, 112 F.3d 1503 (11th Cir.1997), this Court held that same-sex sexual harassment is actionable discrimination under Title VII. See-id. at 1506 (concluding that “the weight of the case-law and the better reasoned cases support the viability” of such claims). Likewise, less than one year later, the Supreme Court unanimously held “that nothing in Title VII necessarily bars a claim of discrimination ‘because of ... sex’ merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex.” Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Although not all violations of Title VII also violate the Constitution, see City of Boerne v. Flores, 521 U.S. 507, 518, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), significantly, there is no difference between the scope of Title VII and the scope of the Equal Protection Clause concerning intentional discrimination in the form of disparate treatment in the public workplace: when utilized as parallel remedies for such discrimination, the elements of a claim under each are identical. See, e.g., Richardson v. Leeds Police Dep’t, 71 F.3d 801, 805 (11th Cir.1995) (per curiam); Cross, 49 F.3d at 1508; Pearson v. Macon-Bibb County Hosp.
*1332 Auth., 952 F.2d 1274, 1281 (11th Cir.1992).[4] Accordingly, such parallel claims may be analyzed together, with no distinctions being drawn between the two. See, e.g., Pearson, 952 F.2d at 1281 (reversing summary judgment on § 1988 equal protection claim of intentional racial ddiscrimination“[flor the[] same reasons” as reversing summary judgment on Title VII disparate treatment claim because “the substantive elements of proof are the same under both statutes”).[5]
For this reason, once Title VII was clarified as proscribing intentional same-sex sexual harassment, a reasonable official was given fair notice that such conduct in the public workplace also violated the Equal Protection Clause. The body of law evidencing the connections between Title VII and the Equal Protection Clause specifically, that body concerning intentional discrimination in the form of disparate treatment in public employment, e.g., Richardson, 71 F.3d at 805; Cross, 49 F.3d at 1508; Pearson, 952 F.2d at 1281-provides the clearly established “state of the law”[6] for the application of Fredette Oncale and comprises an integral part of what must be considered in our qualified immunity inquiry.[7] Accordingly, it is appropriate to conclude that a reasonable official with knowledge of this connection was given fair notice that a violation of Title VII by intentional same-sex sexual harassment in the public workplace would likewise violate the Equal Protection Clause.[8]
Therefore, to the extent that the Plaintiffs’ claims are predicated on sexually harassing conduct that occurred prior to May 22, 1997 (the date we issued Fredette), I agree with the majority that the law at *1333 that time concerning same-sex sexual harassment in public employment was sufficiently unsettled that the Defendants are shielded by the doctrine of qualified immunity. However, I would remand to the district court for further proceedings as to any claims alleged to have arisen after our decision in Fredette, when a reasonable official in the Defendants’ position was given fair notice that the conduct alleged here violated the Equal Protection Clause.

. I agree with the majority that qualified immunity operates to insulate governmental officials performing discretionary functions from personal liability "insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order for a constitutional or statutory right to be deemed "clearly established,” "the contours of that right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.’ ” Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir.2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Further, I agree that "[t]hat the very act (or something materially similar to it) in question has previously been held unlawful by a court is not always necessary,” Majority Op. at 1328, but rather, the "salient question” is whether the "state of the law” gave the offi *1331 cials "fair warning” that what they were doing violated the statutory or constitutional provision in question. Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). That is, "the plaintiff need only show that there existed sufficient case law establishing the contours of his or her constitutional rights such that” a reasonable official would be aware of the unlawfulness of his actions. Nicholson v. Ga. Dep’t of Human Resources, 918 F.2d 145, 147 (11th Cir.1990). Hope made clear that the reasoning of earlier cases may provide such "fair warning,” even if the cases’ specific holdings do not. See Hope, 536 U.S. at 743, 122 S.Ct. 2508 ("The reasoning, though not the holding, in a[n earlier] case ... sent the same message to reasonable officers in that Circuit.”).

. See, e.g., Bazemore v. Friday, 478 U.S. 385, 387 n. 1, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (per curiam) (noting March 24, 1972 as "the date Title VII was made applicable to public employers”).

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

. I concur that this principle, “by itself .. would not compel every objectively reasonable government official” to conclude that a violation of Title VII "would also necessarily violate the Constitution.” Majority Op. at 1328 n. 4. However, the point remains that this principle does not stand "by itself,” but rather must be considered in the larger context of the "state of the law.” Hope, 536 U.S. at 741, 122 S.Ct. 2508. When properly considered in this manner, the Title VII-Equal Protection Clause nexus, along with the holding that intentional same-sex sexual harassment violated Title VII, constituted "fair warning” to a reasonable official that intentional same-sex sexual harassment in the public workplace also violated the Constitution.

. I am not persuaded otherwise by the Supreme Court’s statement in Johnson v. Transportation Agency, Santa Clara County, 480 U.S. 616, 632, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), which is partially quoted in Bass v. Board of County Commissioners, 256 F.3d 1095, 1103 (2001), that "we do not regard as identical the constraints of Title VII and the Federal Constitution on voluntarily adopted affirmative action plans,” primarily because this case does not involve a "voluntarily adopted affirmative action plan[].” Rather, it involves Shelnutt's sexual harassment of males, but not females, in public employment.

. Hope, 536 U.S. at 739, 122 S.Ct. 2508.

. Recognizing the relevance of Title VII case-law to allegations of constitutional violations in the qualified immunity context is not without precedent. See Bator v. State of Hawaii, 39 F.3d 1021, 1028 & n. 7 (9th Cir.1994) (relying on Title VII caselaw to find it clearly established that sex discrimination in the public workplace violated the Equal Protection Clause because "Title VII and equal protection cases address the same wrong: discrimination,” and noting that the differences between Title VII and equal protection claims "do not affect what is prohibited; they affect who can be sued and how the wrong can be remedied”).

. The connection was expressed in Downing v. Board of Trustees of University of Alabama, 321 F.3d 1017 (11th Cir.2003), which relied explicitly on the earlier case of Cross in finding "no principled basis for holding that the Equal Protection Clause is implicated in a case of opposite-sex discrimination but not in a case of same-sex discrimination.” Id. at 1024.